**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LEGACY EXPLORATION, LLC,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:22-CV-00794-S** |
| | § | |
| **OPTIMUM ENERGY PARTNERS LLC,** | § | **JURY DEMANDED** |
| **OPTIMUM EXPLORATION, LLC,** | § | |
| **DERRICK MAY, CHANCE SMITH,** | § | |
| **JON PEARSON, DANIEL HIBBS.** | § | |
| | § | |
| ***Defendants.*** | § | |

---

**OPTIMUM DEFENDANTS' MOTION FOR SANCTIONS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants Optimum Energy Partners, LLC, Optimum Exploration, LLC, Derrick May, Chance Smith, and Jon Pearson (collectively "Optimum Defendants"), and file their Motion for Sanctions against the Plaintiff, Legacy Exploration, LLC ("Legacy"), and would respectfully show as follows:

## I. INTRODUCTION

Attorneys and litigants – particularly litigants who are also attorneys – are expected to treat each other with civility and conduct themselves in a professional manner. Legacy, through its sole owner and member Phillip Peterson, has fallen fall short of this standard in recent weeks. Instead, Mr. Peterson (a licensed attorney) has waged a harassment campaign against defense counsel in this matter, sending numerous, rapid-fire emails in which he has called counsel "losers," "idiots," and "f*cking dumb," has criticized the law schools they attended, and has told counsel he is going to "smoke them," among other things. Equally disconcertingly, Mr. Peterson has copied his

counsel on the vast majority of these communications.

The Fifth Circuit has been clear that such conduct is unacceptable and sanctionable. *See, e.g., Carroll v. Jaques Admiralty Law Firm,* 110 F.3d 290, 293-294 (5th Cir. 1997) (it is not acceptable for a party —particularly a party who is also an attorney—"to attempt to use the judicial system…to harass an opponent in order to gain an unfair advantage in litigation."…when a party's "deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions."). In light of the particularly egregious nature of Mr. Peterson's actions and his counsel's inaction in response to same, Defendants ask this Court to impose sanctions against both Mr. Peterson and his counsel.

## II. FACTUAL BACKGROUND

The instant matter involves claims of trade secret theft, breach of contract, breach of fiduciary duty, and conspiracy lodged by Legacy against several of its former employees. On March 28, 2024, Trojan Tubular Services, LLC ("Trojan Tubular"), a judgment creditor of Legacy, filed a motion to intervene in this case. ECF 133. As set forth in further detail in Trojan Tubular's motion, Trojan Tubular asserts that it has a legally protectable interest in the property that is the subject of this litigation by virtue of its status as a judgment creditor. Further, Trojan Tubular sought the entry of a turnover order from the Dallas County District Court which would direct Legacy to turnover its interest in the instant litigation to Trojan Tubular. At the time the motion to intervene was filed, the motion for a turnover order remained pending with the state court. *See generally* ECF 133. Pursuant to the same, On April 1, 2024, this honorable Court stayed the instant matter pending the resolution of *Timothy J. Trager, individually, Alba L. Trager, individually, and Timothy J. Trager, Trustee of the Timothy J. Trager ASP 401(k) Profit Sharing Plan v. Legacy Exploration, LLC and Andrew Gautreaux*, in the 162nd Judicial District, Dallas County. ECF 145. The Court administratively closed the matter without prejudice, allowing it to it being reopened

upon a motion by any party upon the conclusion of the state court matter. *Id.*

On April 9, 2024, Legacy Exploration, LLC, represented by its owner and manager, Phillip Peterson[1], filed a lawsuit in the 192nd Civil District Court of Dallas County, Texas against Optimum Energy Partners, LLC, Optimum Exploration, LLC, Derrick May, and Chance Smith—all of whom are defendants in the instant suit—as well as Trojan Tubular, David Bridges II, and David Bridges. *Legacy v. Trojan Tubular Services, LLC et al*, DC-24-05229, 192nd District Court of Dallas County, Texas. A true and correct copy of the Petition filed by Mr. Peterson is attached as Exhibit 1. Relevant to the instant matter, the Petition raises causes of action against Optimum Energy Partners, LLC, Optimum Exploration, LLC, Derrick May, and Chance Smith for tortious interference with existing contract, tortious interference with prospective contract, and conspiracy, asserting, in sum, that Trojan Tubular (with the aid of the other defendants) has purposefully harmed Legacy by purchasing Legacy's debt and attempting to intervene in the instant case.

## A. Phillip Peterson's Email Campaign on May 14, 2024

On May 14, 2024, Phillip Peterson began sending a series of inflammatory and unprofessional emails to Brent Buyse and, sometimes, Kirstie Simmerman, counsel for defendants in the instant matter. These emails ranged in subject matter from accusations that defendants wrongfully withheld documents in this case, to threats of reporting Optimum Energy to the U.S. Attorney's Office, to more pointed *ad hominem* attacks. *See* Exhibit 3. When Mr. Buyse responded to Mr. Peterson's emails by stating that he was mistaken in his statements[2], Mr. Peterson took a more unprofessional tone, calling Mr. Buyse an "embarassment,[3]" accusing Mr. Buyse of making his firm look like a "low rent chop shop" with his "juvenile emails," and recommending Mr. Buyse

---

[1] Mr. Peterson is an attorney who has been licensed in the State of Texas since 1997.

[2] *See* May 14, 2024 10:43 AM email from Brent Buyse to Phillip Peterson, .Exhibit 4**.**

[3] Typographical error in original.

"grow up or seek counseling." *See* Exhibits 5 and 6. Mr. Peterson went on to accuse both Mr. Buyse and Ms. Simmerman of "run[ning] an illegal scheme to derail [Legacy's] federal litigation," and asked whether counsel had consulted a lawyer or ethics specialist. *See* Exhibit 8.
Defense counsel asked Mr. Peterson to stop the unproductive barrage of emails and invited Mr. Peterson to reach out if he had anything germane to the lawsuits to discuss. *See* Exhibit 9. In a series of responses, Mr. Peterson continued to malign Mr. Buyse's character, calling his emails "unprofessional and sophomoric," accusing the firm of having poor oversight over counsel, and (ironically) recommending that counsel "start acting like professionals and members of the Bar." *See* Exhibits 10-12.

**B. <u>Phillip Peterson's Continued Email Campaign on May 24, 2024</u>**

On Friday, May 24, 2024, Phillip Peterson emailed Brian Farlow, counsel for Trojan Tubular, and mocked his daughter's graduation from the United States Coast Guard and accused him of "trying to f*ck up federal litigation." *See* Exhibit 13. Two minutes later, Mr. Peterson stated his intention to name Mr. Buyse and Mr. Farlow as fact witnesses and take their depositions, presumably related to the state court lawsuit in the 192nd District Court in Dallas County. *See* Exhibit 14.[4] Presumably unsatisfied with the lack of response to his last email, Mr. Peterson then emailed Mr. Buyse and Ms. Simmerman wherein he repeated the same message he had just conveyed to Messrs. Farlow and Buyse: that he intended to take counsel's depositions and their ability to represent their clients was impaired. *See* Exhibit 16.

In response to this, Ms. Simmerman again repeated her request to Mr. Peterson to keep the conversation confined to substantive issues regarding the lawsuit. *See* Exhibit 17. This email set

[4] Mr. Peterson sent another email some two minutes later to Messrs. Farlow and Buyse claiming their representation of their respective clients was impaired. *See* Exhibit 15.

into motion a series of increasingly unprofessional, profanity-laced emails. Although defense counsel did not respond to a single email, Mr. Peterson continued to hit "send" again and again; in all, he sent 10 emails over the course of 30 minutes. Mr. Peterson stated, among other things:

- "Both of you ethically challenged attorneys are going to be deposed by me"[5]
- "I know neither of you went to top tier law schools, can I make it even dumber for you?"[6]
- "I am going to depose you two idiots. Is that clear?"[7]
- "I hope have (*sic*) gotten ready for the malpractice lawsuit of your life. Judge Ferguson told us that Brent was crazy and incompetent and he told the federal judge [Hon. Scholer, presumably] that. Then you morons tried to pull a scam to evade your criminal responsibility. We are ready to go to trial and kick your asses. So, stop being losers and do your jobs!!!"[8]

At this point, Mr. Peterson began copying Legacy's attorney of record in the instant lawsuit, Greg Evans, on his outbursts. The insults and generally unprofessional communications continued:

- "Legal Team: If you guys are selling girl scout cookies or having enemas please let us know."[9]
- "I have never encountered an attorney as f*cking dumb as Brent Buyse."[10]
- "[n]either of you went to real law schools. You just are billing machines and you suck at practicing law."[11]
- "In all seriousness, how did you find Brent? He is really f*cking dumb!!!!"[12]

---

[5] *See* Exhibit 18

[6] *See* Exhibit 19

[7] *See* Exhibit 20

[8] *See* Exhibit 21

[9] *See* Exhibit 22

[10] *See* Exhibit 23

[11] *See* Exhibit 24

[12] *See* Exhibit 25

- "Has this asshole ever read a case? He's so stupid there is now way it is possible"[13]
- "I view this case as an FPV drone attack on crippled Russian soldiers. Its (*sic*) pathetic and sad but we are going to smoke you."[14]

Importantly, at no point in time did Mr. Evans step in and attempt to curb his client's behavior. Following this tirade, counsel for defendants emailed counsel for plaintiff and asked that they tell their client to cease sending emails and advising that counsel would bring Mr. Peterson's conduct to the court's attention if he did not stop.[15] *See* Exhibit 28. An hour and a half later, Mr. Peterson *again* emailed defense counsel, this time stating that the court needed to address the "criminal acts" of defense counsel.[16]

## III. ARGUMENT

### A. Legal Standard for a Motion for Sanctions.

Courts possess the inherent power "to protect the efficient and orderly administration of justice and…to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997).

Before imposing sanctions against a party under its inherent power, the court must make a specific finding that the party acted in bad faith. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir.

[13] *See* Exhibit 26

[14] *See* Exhibit 27

[15] Given Mr. Evans' silence throughout Mr. Peterson's email attack, counsel elected to email all of Plaintiff's counsel, in the hopes that someone would step in.

[16] *See* Exhibits 29 and 30.

2014) (citing *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (citation omitted)). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *Turfgrass Grp., Inc. v. Ne. Louisiana Turf Farms, LLC*, No. CIV.A. 10-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)). Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay. *See Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988).

The court's inherent power to impose sanctions extends to the parties themselves as well as counsel. *See, e.g., Carroll v. Jaques Admiralty Law Firm*, 110 F.3d 290, 293-294 (5th Cir. 1997); *Petito v. Brewster*, 2008 WL 631326, at *2 (N.D. Tex. Mar. 10, 2008). Further, the Fifth Circuit has held that where, as here, a litigant *is also an attorney*, the heightened standard of conduct applies to that attorney. *Carroll*, 110 F.3d at 293-294 ("We find entirely appropriate the court's expectations of a heightened standard of conduct by a litigant who is also an attorney." (citing *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 (5th Cir.1990)). In *Carroll*, the Fifth Circuit stated that it "adheres to the well-established doctrine that '[a]n attorney, after being admitted to practice, becomes an officer of the court, exercising a privilege or franchise.' " *Howell v. State Bar of Texas*, 843 F.2d 205, 207 (5th Cir. 1988) (quoting *Harkins v. Murphy & Bolanz*, 51 Tex. Civ. App. 568, 112 S.W. 136 (1908, writ dism'd)), *cert. denied*, 488 U.S. 982, 109 S.Ct. 531, 102 L.Ed.2d 563 (1988). "As officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens." *Id.* It is not acceptable for a party—particularly a party who is also an attorney—"to attempt to use the judicial system…to harass an opponent in order to gain an unfair advantage in litigation." *Carroll*, 110 F.3d at 294 (citing *Coane*, 898 F.2d

at 1033).

**B. <u>Attorneys Are Expected to Display Professionalism and Courteousness In The Practice of Law.</u>**

In 1935, our Supreme Court, describing the role of the prosecutor, counselled that while a lawyer "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In 1988, the U.S. District Court for the Northern District of Texas, the very court in which the instant case is being tried, took one of the first steps to mandate civility in *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (en banc) (*per curiam*). In *Dondi*, the judges sitting en banc observed that "valuable judicial and attorney time" was being "consumed in resolving unnecessary contention and sharp practices between lawyers." *Id. at* 286.

In response, the judges adopted a standard by which attorneys appearing in civil actions in the court must adhere. The relevant tenets of that standard are:

> (C) A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves. . . . (E) Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times. . . . (K) Effective advocacy does not require antagonistic or obnoxious behavior and members of the Bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

*Id.* at 287–88.

In *In re First City Bancorporation of Texas Inc.*, 282 F.3d at 865 ("*First City*"), an attorney was sanctioned for $25,000 for among other things:

- He characterized other attorneys, including an Assistant United States Attorney, as (1) a "stooge"; (2) a "puppet"; (3) a "weak pussyfooting 'deadhead' " who "had been 'dead' mentally for ten years"; (4) "various incompetents"; (5) "inept"; (6) "clunks"; (7) "falling all over themselves, and wasting endless hours"; (8) "a bunch of starving slobs"; and (6) an "underling who graduated from a 29th-tier law school."

- He called the chairman of First City a "hayseed" and a "washed-up has been," and he also called other First City directors "scoundrels."
- He referred to one law firm, Carrington, Coleman, Sloman & Blumenthal, L.L.P. as "stooges" of another law firm, Vinson & Elkins, L.L.P.
- He referred to the work of other attorneys as "garbage" that demonstrated "legal incompetence" while involving "ludicrous additional time and expense."
- He asserted that Vinson & Elkins was using First City as a "private piggybank."
- He described an executive compensation plan approved by the bankruptcy court as a "bribe."

*Id.* at 865 – 66.

The trial court found that the attorney's behavior was "'egregious, obnoxious, and insulting behavior [that] constituted an unwarranted imposition upon and an affront to [the trial court] and the parties and practitioners [in the case].'" *Id.* at 886. The trial court imposed a monetary sanction of $22,500 and barred the attorney from practicing in the bankruptcy courts of the Northern District of Texas unless he first obtained written permission from the court. After the sanction was appealed, the trial court removed the bar from the Northern District of Texas, but added $2,500 for the appeal, which the parties had to spend time entertaining. *Id.* at 867. The Fifth Circuit upheld the sanction. *Id.* at 867.

In *Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 315 (5th Cir. 2024), the Fifth Circuit examined the poor behavior of an attorney and found that his behavior was so objectionable that it required a new trial. The attorney in *Clapper*, among other things, said:

> that if [opposing counsel] had accused him of perjury in the street rather than the courtroom he would have 'kicked his butt.' He then declared, 'I don't care if I was half blind and half-lame, I would have found the strength to whoop his a--.' He continued, explaining that if [opposing counsel] were his child, he would have 'spanked' him for asking so many leading questions. [The attorney] also accused [opposing counsel] of attempting to 'hide evidence' and called him an 'embarrass[ment] for the profession.'

*Id.* at 315. Another attorney in the same case called the opposing party's expert witness a "'paid prostitute from Michigan'" and referred to the opposing counsel as "a 'dishonest broker' who was

'deceitful and deceptive.'" *Id.* The *Clapper* court found that these remarks extended far beyond permissible hyperbole or expressive language. *Id.* at 316.

**C. Phillip Peterson's History of Insulting Emails is Grossly Unprofessional and Abusive.**

Here, it is almost as if Mr. Peterson used the case *First City* as an instruction manual on how to act in an unprofessional manner. The attorney in *First City* insulted the intelligence of his colleagues in the bar by calling them "'dead' mentally" and "inept." *First City*, 282 F.3d at 865. Here, Mr. Peterson called Mr. Buyse "f*cking dumb" at least twice. *See* Ex. 23 and 25. Mr. Peterson also called Mr. Buyse "stupid" and accused him of never having read a case. *See* Ex. 26. Mr. Peterson also called both Ms. Simmerman and Mr. Buyse "idiots." Ex. 20 ("I am going to depose you two idiots.")

In *First City*, the attorney insulted the academic achievements of the attorneys by disparaging the rank of their law schools. *First City*, 282 F.3d at 865 – 66 (stating that the attorney called opposing counsel an "underling who graduated from a 29th-tier law school."). Here, like *First City*, Mr. Peterson insulted Ms. Simmerman and Mr. Buyse's collective law schools—again, twice. *See* Ex. 19 ("I know neither of you went to top tier law schools, can I make it even dumber for you?") *and* Ex. 24 ("[n]either of you went to real law schools. You just are billing machines and you suck at practicing law."). The attorney in *First City* questioned the competence of his colleagues in the bar calling them "various incompetents." *First City*, 282 F.3d at 865 – 66. Here, like *First City*, Mr. Peterson insulted both Mr. Buyse's competence as an attorney (Ex. 21) and the management and dedication of Ms. Simmerman. Ex. 11 ("'[o]f course you couldn't even be bothered to attend our last mediation, so I doubt you are reading the unhinged rants of your colleague.").[17]

---

[17] Naturally, Mr. Peterson was wholly unaware of the fact that Ms. Simmerman was appearing in the Western District of Oklahoma for a mandatory, in-person settlement conference at the same time this case

In *Clapper*, the attorney called his opposing counsel an "embarrassment to the profession." *Clapper*, 95 F.4th at 315. Here, Mr. Peterson called Mr. Buyse an embarrassment to his law firm. *See* Ex. 5. In *Clapper*, the attorney displayed unprofessionalism by stating that he would have "kicked his butt" and "whoop his ass" *Id.* Here, Mr. Peterson repeatedly used taunting or possibly threatening language towards his colleagues in the bar by stating he would "smoke them." Ex. 3; Ex. 27.

Mr. Peterson repeatedly questions the professionalism of Mr. Buyse and the attorneys of Gordon Rees Scully Mansukhani. *See* Ex. 6 ("Brent, Do yourself a favor and that of your professional reputation and exhibit professionalism in the upcoming trial. Regards, Phillip"); Ex. 8 (accusing Ms. Simmerman and Mr. Buyse of "run[ning] an illegal scheme to derail [Legacy's] federal litigation. . ."); Ex. 12 ("I suggest that both you and Mr. Buyse start acting like professionals and members of the Bar."). Finally, Mr. Peterson's rant bordered on the perverse by asking opposing counsel if they were "selling girl scout cookies or having enemas." Ex. 22.

Whatever else, Mr. Peterson, who is Legacy's agent in this matter, has acted in a grossly unprofessional and outrageous manner and he should be sanctioned accordingly.

### D. Counsel Either Encouraged or Failed To Restrain Their Client.

Mr. Peterson sent dozens of staggeringly unprofessional emails, all while carbon copying his counsel, Greg Evans. *See* Exs. 3. 5, 6, 8, 10 – 15, 22 – 27. It is also worth noting that the original series of emails sent by Mr. Peterson appeared to be in response to emails between counsel forwarded to Mr. Peterson by Mr. Evans. *See, e.g.*, Ex. 2. Defense counsel asked for Mr. Peterson's behavior to stop three separate times—twice to Mr. Peterson directly (with copy to his counsel), and a third time to Legacy's attorneys See Ex. 9, Ex 17, and Ex. 28. And yet, after

---

was being mediated, thus explaining her absence.

privately emailing counsel regarding Mr. Peterson's behavior, Ms. Simmerman and Mr. Buyse received two more emails from Mr. Peterson that directly referenced the email Ms. Simmerman sent, while calling the attorneys and their law firm criminal. *Compare* Ex. 28 ("I'd ask that you tell Mr. Peterson to stop sending these inflammatory, rapid-fire emails. If it continues, we intend to advise Judge Scholer of Mr. Peterson's behavior.") *with* Ex. 29 ("We need Judge Scholer to address the criminal acts of Gordon Rees.").

At a minimum, plaintiff's counsel failed to restrain their client at any point in time during the barrage of abusive emails over the course of two separate days. At worst, counsel endorsed or otherwise encouraged Mr. Peterson's behavior. In any event, Legacy's attorneys failed to put a stop to this long after it was clear that something needed to be done to maintain professionalism in this case. They should be sanctioned accordingly.

## IV. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Legacy respectfully prays this Court grant the instant Motion and impose an appropriate sanction against Legacy and/or its counsel, and for such further relief to which Defendants may be entitled.

Respectfully submitted,

**GORDON REES**
**SCULLY MANSUKHANI, LLP**

*/s/ Kirstie M. Simmerman*
**KIRSTIE M. SIMMERMAN**
State Bar No. 24083858
ksimmerman@grsm.com
**DAVID C. BABB**
State Bar No. 24120261
dbabb@grsm.com
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
(214) 231-4660 Telephone
(214) 461-4053 Facsimile

**ATTORNEYS FOR DEFENDANTS OPTIMUM ENERGY PARTNERS LLC, OPTIMUM EXPLORATION, LLC DERRICK MAY, CHANCE SMITH, AND JON PEARSON**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2024, a true and correct copy of the foregoing document was served on all counsel of record via the court's electronic filing system.

/s/ *David C. Babb*
**DAVID C. BABB**