**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LEGACY EXPLORATION, LLC,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:22-CV-00794-S** |
| | § | |
| **OPTIMUM ENERGY PARTNERS LLC, et al.** | § | |
| | § | |
| | § | |
| ***Defendants*.** | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Defendants Optimum Energy Partners, LLC, Optimum Exploration, LLC, Chance Smith, and Derrick May ("Optimum Defendants") file this Reply in Support of their Motion for Sanctions against Plaintiff Legacy Exploration, LLC, its general counsel and principal owner, Mr. Phillip Peterson ("Mr. Peterson") and respectfully show the Court as follows:

## I. INTRODUCTION

Legacy attempts to shield itself and Phillip Peterson from the repercussions of Mr. Peterson's actions by claiming that they are both beyond the reach of this Court by virtue of Mr. Peterson's position as in-house counsel. In making this argument, not only does Legacy ignore a body of case law providing for sanctions against parties based on the conduct of their in-house counsel as well as sanctions against in-house counsel directly based on their behavior in litigation, it ignores the fact that Mr. Peterson is also the majority owner of Legacy, and as such, his actions can and should be imputed to the company.

Further, the behavior exhibited by Mr. Peterson in interacting with defense counsel is not an isolated incident, as Legacy would have this Court believe. While Defendants have no reason

to question whether Mr. Peterson is in fact battling the serious problem he details in his declaration, they *do* challenge the notion that the serious problem has caused Mr. Peterson to act out of character. Instead, as the evidence attached to this Reply will show, the behavior at issue is just the latest in a series of unprofessional behaviors towards business associates and other members of the bar, the common theme being threats and intimidation as it relates to ongoing litigation. For the reasons below, and those set forth in Defendants' Motion for Sanctions, Defendants urge the Court to sanction Mr. Peterson and/or Legacy for this unprofessional behavior.

## II. ARGUMENTS AND AUTHORITIES

### A. Legacy And Phillip Peterson Can Be Sanctioned.

#### *1. Legacy Can Be Sanctioned.*

Despite Legacy's argument to the contrary, a company that is a party to litigation can be sanctioned for the conduct of its in-house counsel. For example, just last year the Fifth Circuit issued sanctions against a company for the actions of its in-house counsel. In *Ben E. Keith Company v. Dining Alliance, Inc.*, Dining Alliance, acting through in-house counsel, made misrepresentations in its pleadings and failed to correct them, even after in-house counsel knew the information was misleading. 80 F.4th 695, 703 (5th Cir. 2023). The court found it appropriate to sanction Dining Alliance for counsel's conduct. *See also PIC Group, Inc. v. LandCoast Insulation, Inc.*, 2011 WL 2669144, *10-11 (S.D. Miss. July 7, 2011) (court ordered sanctions against defendant for discovery abuses (in particular, deleting data) carried out by its in-house counsel). In the very same way, Legacy can and should be sanctioned for the unethical and improper behavior its in-house counsel, Phillip Peterson, has exhibited in this litigation.

Moreover, it is well-established that "[a] corporation is only a legal entity and strictly speaking it cannot act or have a mental state by itself. Nevertheless, the acts and mental states of its agents and employees will be imputed to the corporation where such natural persons acted on

behalf of the corporation." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) (citing 10 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 4877 (2012 ed.) (internal citations omitted)). While Mr. Peterson himself is not a named party in this litigation, he is Legacy's in-house counsel and, by Legacy's own admission, "for the past several years, Mr. Peterson has managed this litigation" on Legacy's behalf. *See* Plaintiff's Response to Defendants' Motion for Sanctions ("Response") [Doc. No. 157] at p. 3, ¶ 3. In addition to serving as Legacy's in-house counsel, Mr. Peterson is also the majority owner of the company (at 83%). *See* Ex. 13 at 7:18-21, 14:10-17. Whether as Legacy's in-house counsel or majority owner, Mr. Peterson assuredly speaks for Legacy.[1]

Therefore, when Mr. Peterson sends opposing counsel emails calling them "losers," "idiots," and "f*cking dumb," it is as if Legacy is acting in this manner. Accordingly, Legacy can and should be sanctioned for Mr. Peterson's conduct.

***2. Mr. Peterson Can Be Sanctioned.***

This Court also has the authority to sanction Mr. Peterson, as in-house counsel for Legacy, for his conduct. This is not a novel or untested concept in the Fifth Circuit. In *McGuire v. Sigma Coatings*, a district court sanctioned in-house counsel *sua sponte* for the destruction of evidence. Although the Fifth Circuit vacated the sanctions order, it was because the district court had not issued a show cause order or similar order or process that would have put counsel on notice that sanctions were being considered against him personally. *See* 48 F.3d 902, 907 (5th Cir. 1995). Importantly, the Fifth Circuit did *not* find that in-house counsel was immune from sanctions due to his position. Here, Mr. Peterson is certainly on notice that sanctions are being considered against him personally, both by way of the Court's previous Order to Show Cause and through Defendants'

[1] Indeed, Texas Disciplinary Rules of Professional Conduct state "[a] lawyer is a representative of clients…" TX ST RPC Preamble at ¶ 1.

Motion for Sanctions.

***3. Legacy Has Argued In This Case That An Owner Is Always Acting To Control His Company—No Matter The Ownership Stake.***

It is worth noting that Legacy has taken the exact opposite position to the one it currently takes with respect to company ownership and control. In particular, in Legacy's Objection/Response to Trojan Tubular's Motion to Intervene, Legacy argued to this Court that Trojan Tubular's motion should be denied because, among other reasons, Chance Smith is one of the owners of Trojan Tubular, (*see* Doc. No. 142 at p. 1), and thus any action by Trojan Tubular was an action by Chance Smith. *Id.* at 1 – 2. Now, ironically, Legacy comes before this Court and claims that Legacy itself should not be sanctioned because Phillip Peterson – its attorney and majority owner – is not a party or Legacy's manager[2], and thus he cannot speak for the company. *See* Plaintiff's Response (Doc. No. 157) at pp 1, 4.

Legacy's positions here are self-serving and intellectually dishonest. On the one hand, it claims that the defendants are always acting in an operative capacity as owners; on the other hand, when sanctions are involved, it claims that its owner is not in a speaking or operative capacity for Legacy. It cannot have it both ways.

**B. <u>Sanctions Are Appropriate Based on Mr. Peterson's Pattern of Unprofessional Conduct</u>.**

The thrust of Legacy's argument opposing sanctions is that Mr. Peterson "did not do this intentionally" and that the conduct at issue was merely an isolated incident over a brief period of time on the Friday afternoon before Memorial Day. *See* Response at p. 2, ¶ 2. He goes on to state in his Declaration that [redacted]

[2] Legacy claims in its Response that Andrew Gautreaux controls the company's day-to-day operations, but in his deposition, Mr. Peterson testified that "the company isn't really operating." *See* Response at p. 4, ¶ 2; Ex. 13 at 7:18-21.

[redacted] Yet, a little over an hour after the last email was sent, Mr. Peterson posted a nearly two minute long video on his Facebook page entitled “Attorneys are criminals,” wherein he launched a series of personal attacks against not only the named defendants in this litigation, but defense counsel as well. *See* Ex. 1; *see also* Decl. of Haunah Miller ¶¶ 3 – 4. Highlights include referring to Gordon Rees Scully Mansukhani as “a bunch of shitty lawyers” and “a big f*ckin’ morass of stupidity” and, in speaking specifically about defense counsel in the instant litigation, said “these assholes” are “engaging in white collar criminal behavior” and “should be disbarred.” *Id.* More disturbingly, in the background of the video, one can see a gun range target in the shape of a human with Derrick May’s face taped to the center:

[redacted] Yet, when one compares the emails on May 14 with the emails sent May 24, both sets are sent one after another in quick succession.



Of course, the behavior on May 14 and May 24 are not isolated incidents, although Legacy and Mr. Peterson would have this Court believe otherwise. Instead, this is a pattern of behavior that Mr. Peterson has consistently engaged in for a number of years with attorneys and lay persons alike in the context of actual or threatened litigation. This is who Mr. Peterson is.

For example, Legacy and Optimum are embroiled in litigation in state court in Dallas County, in which Optimum is represented by Tom McElyea. In connection with that litigation, Mr. Peterson sent a number of unprofessional emails to Mr. McElyea, wherein he called Mr. McElyea a "p*ssy," told him he could not "wait to kick [his] ass at trial," and accused one of Mr. McElyea's clients of being investigated for sexual assault. *See* Ex. 4; Decl. of Tom McElyea ¶ 4.[4] He followed these emails up with a voicemail on February 9, 2022 in which he repeatedly called Mr. McElyea "a f*cking piece of shit" and threatened to have Mr. McElyea disbarred. *See* Ex. 2; Decl. of Tom McElyea ¶ 3.

Just last year, Mr. Peterson engaged in similar behavior with another attorney who is representing plaintiffs in a separate lawsuit against Legacy. As Mr. Peterson testified during his deposition in the instant case, that exchange, which he described as "vitriolic conversations on email" led the attorney with Steptoe Johnson to file a grievance with the State Bar. *See* Exh. 12, 8:23-9:7. There has been at least one other grievance filed against Mr. Peterson with the State Bar based on this type of behavior. *See* Declaration of Justin Hilty at ¶ 2.

Mr. Peterson also has a proclivity to send harassing text messages to business associates as well, all within the context of threatened litigation. In particular, Mr. Peterson sent a series of threatening and vulgar text messages to Joey Shelton and John Griffin – both former Legacy employees – in which Mr. Peterson said, among other things:

- I'm coming for you. Andy [Gautreaux, presumably] and I are going to send you into personal bankruptcy.
- Tell your shitty lawyer he's gonna get disbarred.

[4] During the June 11, 2024 hearing regarding Defendants' Motion for Sanctions, Plaintiff's counsel disclaimed any prior knowledge of these emails, the voicemail to Tom McElyea or the text messages referenced below. It is worth noting that Defendants produced all of these documents in September of 2023 in discovery.

- F*ck you Joey I'm gonna crush you.
- I'm going to f*ck you [in] the ass and bankrupt you.
- I'm gonna put your dad back in prison.
- Your son will be in a foster Family. (*sic*)
- You are going to prison.
- I'm going to sue your ass you c*nt.
- I'm going to sue your ass. Get ready.

*See* Exs. 5-11; *see also* Decl. of John Griffin at ¶¶ 3 – 4; *see also* Decl. of Joseph Shelton at ¶¶ 3 – 4.

This documented history of Mr. Peterson's unprofessional and vitriolic behavior demonstrates that the behavior at issue in the instant motion is not out of character. Instead, the emails sent to defense counsel are among the latest in a long line of unchecked, abusive and disturbing behavior.

**C. <u>Mr. Peterson Is Required To Abide By The Rules And Standards For Attorneys</u>.**

While Defendants do not question the serious problem with which Mr. Peterson contends he battles, this problem does not excuse Mr. Peterson from complying with his ethical obligations as a member of the bar. The Texas Lawyers' Creed requires *all* Texas attorneys to be courteous and civil, to treat adverse parties with fairness and due consideration, and to avoid being antagonistic or obnoxious. *See* Texas Lawyers' Creed Sec. III, Nos. 1, 6 and 9. Indeed, many attorneys deal with problems similar to Mr. Peterson and manage not to call opposing counsel "f*cking dumb" or "white collar criminals."

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request their Motion for Sanctions be granted.

Respectfully submitted,

**GORDON REES**
**SCULLY MANSUKHANI, LLP**

*/s/ David C. Babb*
**KIRSTIE M. SIMMERMAN**
State Bar No. 24083858
ksimmerman@grsm.com
**DAVID C. BABB**
State Bar No. 24120261
dbabb@grsm.com
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
(214) 231-4660 Telephone
(214) 461-4053 Facsimile

**ATTORNEYS FOR DEFENDANTS OPTIMUM ENERGY PARTNERS, LLC, et al.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, a true and correct copy of the foregoing document was served on all counsel of record via the court's electronic filing system.

*/s/ David C. Babb*
**DAVID C. BABB**